UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| LAWRENCE ZINSER, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 24-cv-10847-ADB |
| | * | |
| STEVE KENNEDY, *in his official capacity* | * | |
| *as Superintendent of Old Colony* | * | |
| *Correctional Ctr.*, and ANDREA | * | |
| CAMPBELL, *in her official capacity as* | * | |
| *Attorney General of Massachusetts*, | * | |
| | * | |
| Respondents. | * | |
| | * | |

**<u>MEMORANDUM AND ORDER</u>**

BURROUGHS, D.J.

Lawrence Zinser ("Petitioner") is serving a four-to-six-year sentence imposed for a probation violation. [ECF No. 17 ("Supplemental Answer" or "S.A.") at 20]. Currently before the Court is his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. [ECF No. 1]. For the reasons set forth below, the petition is **<u>DENIED</u>**.

# I.    BACKGROUND

## A.    Factual Background

The Massachusetts Appeals Court ("MAC") provided the following account of relevant facts, which the Court presumes to be correct.[1] Strickland v. Goguen, 3 F.4th 45, 47–48 (1st Cir. 2021) ("If the Supreme Judicial Court of Massachusetts, the Commonwealth's highest court, has declined to review the conviction, then we can rely upon the last reasoned decision issued by the Massachusetts Appeals Court . . . in crafting the factual and procedural narrative." (citation modified)).

> In August 1998, a jury convicted the [Petitioner] of armed assault with intent to kill, assault and battery with a dangerous weapon on a person over sixty, and malicious destruction of property. The [Petitioner] appealed, and the judgments of conviction were affirmed by a different panel of this court in an unpublished memorandum and order. See Commonwealth v. Zinser, 51 Mass. App. Ct. 1105 (2001). In February 2021, after a lengthy term of incarceration (twenty-three years), the [Petitioner] was released from prison and began to serve a ten-year term of probation. Approximately six months later, on August 2, 2021, he was indicted by a grand jury and charged with two counts of criminal harassment, subsequent offense, in violation of G. L. c. 265, § 43A. On the basis of the new charges, the probation department issued a notice of surrender, alleging that the defendant had violated the condition of his probation requiring him to "obey local, state, and federal laws, and court orders."[2]

> Based on the evidence presented at the probation revocation hearing, the judge could have found as follows. The [Petitioner] has a lengthy criminal history that included incidents of criminal harassment. The alleged victims of the new

---

[1] "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). This presumption applies with equal force to findings of fact by state trial and appellate courts. RaShad v. Walsh, 300 F.3d 27, 35 (1st Cir. 2002).

[2] The notice of surrender further states that "the [Petitioner] had violated the special condition of his probation requiring him to have 'no contact direct or indirect . . . with victims or family of victims.'" Commonwealth v. Zinser, 222 N.E.3d 503, 2023 WL 7179297, at *1 n.4 (Mass. App. Ct. 2023) (table), review denied, 225 N.E.3d 809 (Mass. 2024). Because the judge presiding over the revocation hearing determined that the evidence did not support a finding that Petitioner violated the no contact order, he did not revoke his probation on that basis. Id.

criminal harassment charges, Susan and Linda,[3] had been subjected to the [Petitioner's] intimidating and harassing conduct before he was incarcerated in 1998. Although the [Petitioner] was not convicted of any offense involving either victim, they both reported the [Petitioner's] conduct to the police at that time. The ensuing investigation revealed that the [Petitioner] made annoying and harassing telephone calls to Susan, sent her letters containing "sexual overtones and threatening gestures," and on two separate occasions the tires of cars belonging to her parents and neighbors were slashed. The [Petitioner] also wrote to Linda, and in one letter he referred to Susan as a "she monster" and speculated that "I guess you'll be talking about me to her [Susan] in 1992!" After Linda gave the letter to the police, the tires of cars belonging to her family were slashed.

Within a few months of being released from prison, the [Petitioner] attempted to contact Linda and Susan by calling the telephone numbers associated with the homes in which they lived decades earlier when the defendant knew them. The [Petitioner] called Linda's number three times on her birthday in April 2021. Linda's mother was still residing in the house and did not answer the first two calls because she did not recognize the number. She answered the third call and spoke briefly with the caller, who asked for Linda. The mother replied that Linda was not home. After the caller hung up, the mother dialed the number appearing as the last call on her phone and learned that the number belonged to the [Petitioner]. Linda was interviewed about the telephone calls by a police detective who was familiar with the defendant's prior criminal conduct. He described her as "extremely shaken" and she expressed her fear of the [Petitioner]. She stated that she "could not believe that [the harassment] was happening again."

The [Petitioner] also telephoned Susan's childhood home. Susan testified about the telephone calls before the grand jury. Portions of her testimony were submitted as an exhibit at the probation revocation hearing. She related that the [Petitioner] spent ten years terrorizing her and her family in the 1990s. When Susan learned that the [Petitioner] had been released from prison, she moved her elderly mother out of her childhood home out of fear that the [Petitioner] would target Susan and her family again. Telephone records obtained during the investigation showed six telephone calls from the [Petitioner's] phone number were placed to Susan's prior home. The first call was made on April 25, four calls were made on April 27, and one call on April 28. None of these telephone calls was answered. Susan was "[t]errified" on learning the [Petitioner] had called her mother's home.

Zinser, 2023 WL 7179297, at *1–2.

---

[3] The victims' names, Susan and Linda, are pseudonyms. Zinser, 2023 WL 7179297, at *1 n.6.

3

### B.    Massachusetts Criminal Harassment Statute, Mass. Gen. Laws ch. 265, § 43A

The Massachusetts criminal harassment statute provides in relevant part that

> [w]hoever willfully and maliciously engages in a knowing pattern of conduct or series of acts over a period of time directed at a specific person, which seriously alarms that person and would cause a reasonable person to suffer substantial emotional distress, shall be guilty of the crime of criminal harassment and shall be punished by imprisonment in a house of correction for not more than 2 ½ years or by a fine of not more than $5,000, or by both such fine and imprisonment. The conduct or acts described in this paragraph shall include, but not be limited to, conduct or acts conducted by mail or by use of a telephonic or telecommunication device or electronic communication device including, but not limited to, any device that transfers signs, signals, writing, images, sounds, data or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photo-electronic or photo-optical system, including, but not limited to, electronic mail, internet communications, instant messages or facsimile communications.

Mass. Gen. Laws ch. 265, § 43A.  To support a theory of criminal harassment, the

Commonwealth

> must show that there is probable cause that (1) the defendant engaged in a knowing pattern of conduct or speech, or series of acts, **on at least three separate occasions**; (2) the defendant intended to target the victim with the harassing conduct . . . on each occasion; (3) the conduct . . . [was] of such a nature that [it] seriously alarmed the victim; (4) **the conduct . . . [was] of such a nature that [it] would cause a reasonable person to suffer substantial emotional distress**; and (5) the defendant committed the conduct . . . "willfully and maliciously."

Commonwealth v. Brennan, 112 N.E.3d 1180, 1184–85 (Mass. 2018) (quotations and citation

omitted) (emphases added).

### C.    Procedural History

At Petitioner's probation revocation hearing on August 13, 2021, a judge of the

Middlesex Superior Court determined that he more likely than not violated the conditions of his

probation by committing a new crime in violation of the criminal harassment statute, Mass. Gen.

Laws ch. 265, § 43A.[4]  [S.A. at 19, 81–82].[5]  Petitioner appealed to the MAC on April 7, 2024,

[id. at 25],[6] arguing that the Superior Court's interpretation of the criminal harassment statute

was not supported by evidence and rendered it unconstitutionally vague, thus depriving him of

his due process rights.  [Id. 35–45].  Specifically, Petitioner argued that revoking his probation

for criminal harassment was an abuse of discretion because (i) dialing telephone numbers is not

conduct that would cause a reasonable person to suffer substantial emotional distress and finding

that it did in light of Linda and Susan's individual reactions in essence removes the reasonable

person standard, [id. 35–39]; (ii) he was not provided with notice as to whom he was not to

contact in order to obey state laws and, as such, the Superior Court's decision deprived him of

his due process rights, [id. at 39–43]; and (iii) the Superior Court's interpretation of the statute

rendered it unconstitutionally vague, [id. at 43–45].  The MAC rejected Petitioner's arguments

and affirmed the Superior Court's probation revocation on November 1, 2023.  Zinser, 2023 WL

7179297, at *1.  Petitioner subsequently filed an Application for Leave to Obtain Further

Appellate Review ("ALOFAR") with the Massachusetts Supreme Judicial Court ("SJC") on

November 21, 2023, [S.A. at 23–24, 188], similarly arguing that the MAC's construction of the

harassment statute was wrong and unconstitutionally vague and overbroad, [id. at 188–200].  On

January 12, 2024, the SJC denied Petitioner's ALOFAR without a written decision.  [Id. at 24].

---

[4] "In a probation revocation hearing, the issue to be determined is not guilt beyond a reasonable
doubt but, rather, whether the probationer more likely than not violated the conditions of his
probation."  Commonwealth v. Kelsey, 982 N.E.3d 1134, 1144 (Mass. 2013).
[5] The Court notes that the transcript from the final probation surrender hearing is incomplete.
See [ECF No. 17-3]; Zinser, 2023 WL 7179297, at *1 n.5.  As a result, the parties filed a motion
to reconstruct the record, [S.A. at 75–80], which the judge allowed in part, with certain
modifications, [id. at 81–82].
[6] Although Petitioner's appeal was untimely, the MAC elected to decide his appeal on the merits.
Zinser, 2023 WL 7179297, at *1 n.2.

Petitioner did not file a petition for certiorari in the United States Supreme Court.  [ECF No. 1 at 4].

Petitioner filed the instant petition for a writ of habeas corpus with a supporting memorandum of law on April 2, 2024.  [ECF Nos. 1, 2].  On August 20, 2024, Petitioner filed a supplemental memorandum of law, "intended to supplement and/or replace the one filed with [the] initial petition."  [ECF No. 21 at 1 n.1].  Respondents opposed the petition on November 18, 2024.  [ECF No. 26].

## II.    LEGAL STANDARD

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when a claim has previously been adjudicated on the merits by a state court, a petitioner may only obtain habeas relief if that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Brown v. Davenport, 596 U.S. 118, 127 (2022).

Under § 2254(d)(1), a state court decision is "contrary to" clearly established Supreme Court precedent[7] if: (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law;" or (2) the state court decides a case differently from a decision of the Supreme Court on a materially indistinguishable set of facts.  Williams v. Taylor,

---

[7] Only Supreme Court decisions constitute clearly established federal law for habeas purposes. See Brown, 596 U.S. at 136; Parker v. Matthews, 567 U.S. 37, 48–49 (2012) (per curiam) ("[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court[.]' It therefore cannot form the basis for habeas relief under AEDPA." (citation omitted)).

529 U.S. 362, 412–13 (2000) (O'Connor, J., delivering the opinion of the Court). A state court

unreasonably applies federal law when it "identifies the correct governing legal rule . . . but

unreasonably applies it to the facts of the particular state prisoner's case." Bebo v. Medeiros,

906 F.3d 129, 134 (1st Cir. 2018). Section 2254(d)(1) does not, however, "require state courts to

extend [Supreme Court] precedent or license federal courts to treat the failure to do so as error."

Id. (quoting White v. Woodall, 572 U.S. 415, 426–27 (2014)). The unreasonable application

clause "affords relief 'if, and only if, it is so obvious that a clearly established rule applies to a

given set of facts that there could be no fairminded disagreement on the question.'" Webster v.

Gray, 39 F.4th 27, 34 (1st Cir. 2022) (quoting White, 572 U.S. at 427). In other words, to

warrant relief, "the state court's application of Supreme Court precedent 'must be objectively

unreasonable, not merely wrong; even clear error will not suffice.'" Id. (quoting White, 572 U.S.

at 419); Field v. Hallett, 37 F.4th 8, 16 (1st Cir. 2022) ("Even where a state court has misapplied

federal law, we will only grant relief to the petitioner 'in cases in which all fairminded jurists

would agree that a final state court decision is at odds with the Supreme Court's existing

precedents.'" (quoting Strickland v. Goguen, 3 F.4th 45, 53 (1st Cir. 2021))). "'[T]he more

general the [federal] rule[,] . . . the more leeway [state] courts have in reaching outcomes in case-

by-case determinations' before their decisions can be fairly labeled unreasonable." Brown, 596

U.S. at 144 (alterations in original) (quoting Renico v. Lett, 559 U.S. 766, 776 (2010)).

Section 2254(d)(2), an alternative to § 2254(d)(1), requires Petitioner to show that the

state court's decision on the merits "was based on an unreasonable determination of the facts in

light of the evidence presented in the State court proceeding." An "unreasonable determination

of the facts" under 28 U.S.C. § 2254(d)(2) is a "demanding showing." Porter v. Coyne-Fague,

35 F.4th 68, 75 (1st Cir. 2022). The Court "may not characterize . . . state-court factual

determinations as unreasonable 'merely because [the Court] would have reached a different conclusion in the first instance.'" Brumfield v. Cain, 576 U.S. 305, 313–14 (2015) (quoting Wood v. Allen, 558 U.S. 290, 301 (2010)). Section 2254(d)(2) "requires that [the Court] accord the state trial court substantial deference." Id. at 314. "[E]ven if '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's . . . determination.'" Wood, 558 U.S. at 301 (quoting Rice v. Collins, 546 U.S. 333, 341–42 (2006)).

Thus, to obtain habeas relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011). "The petitioner carries the burden of proof." Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (citing Woodford v. Visciotti, 537 U.S. 19, 25 (2002)). "[H]abeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Harrington, 562 U.S. at 102–03 (quoting Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring)). "'[T]he gap between erroneous state court decisions and unreasonable ones is narrow,' and 'it will be the rare case that will fall into this gap.'" O'Laughlin v. O'Brien, 568 F.3d 287, 299 (1st Cir. 2009) (quoting Evans v. Thompson, 518 F.3d 1, 6 (1st Cir. 2008)).

Further, a federal court also cannot grant habeas relief to a state prisoner unless the petitioner has first exhausted his federal constitutional claims in state court. See 28 U.S.C. § 2254(b)(1)(A). The petitioner "must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). A claim for habeas relief is exhausted if it has been "fairly and

recognizably" presented in state court. Sanchez v. Roden, 753 F.3d 279, 294 (1st Cir. 2014) (quoting Casella v. Clemons, 207 F.3d 18, 20 (1st Cir. 2000)). "[A] petitioner, [in other words,] must have 'tendered his federal claim [in state court] in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question.'" Id. (quoting Casella, 207 F.3d at 20). That said, if "a habeas petitioner's unexhausted claim is patently without merit, the AEDPA allows a federal court, in the interests of judicial economy, to dispose of that claim once and for all." Coningford v. Rhode Island, 640 F.3d 478, 483 (1st Cir. 2011) (citing 28 U.S.C. § 2254(b)(2); Granberry v. Greer, 481 U.S. 129, 135 (1987)).

## III.    DISCUSSION

Petitioner challenges the revocation of his probation under § 2254(d)(1). See [ECF No. 21 at 4–11]. As the sole basis for federal habeas relief, Petitioner argues, in essence, that the state courts' interpretation of the Massachusetts criminal harassment statute as applied to him violated the vagueness doctrine and thereby his due process rights under the Fourteenth Amendment.[8] See [ECF Nos. 2, 21]. Petitioner asserts that the state courts turned the reasonable person standard on its head by considering the overall context in which Linda and Susan reacted to his phone calls—that is, their prior history with Petitioner nearly thirty years earlier. [ECF No. 2 at 3–5]; [ECF No. 21 at 4–11]. In doing so, the state courts termed the otherwise innocuous act of placing phone calls as harassing conduct, [ECF No. 2 at 4]; [ECF No. 21 at 5–

_____

[8] The Court observes that Petitioner's arguments are not straightforward or presented coherently. See generally [ECF Nos. 2, 21]. Neither is it clear to the Court how and to what extent the second memorandum of law, [ECF No. 21], complements the first, [ECF No. 1]. Separately, the Petitioner failed to indicate in his petition the ground on which he seeks relief. See [ECF No. 1 at 6]. As such, the Court's characterization of Petitioner's argument is based on an effort to consider both memoranda of law and construe the arguments presented therein in a manner most generous to Petitioner.

6], depriving him of any notice as to what actions may constitute a crime in violation of the Constitution, [ECF No. 2 at 3–5]; [ECF No. 21 at 4–11]. The Court finds Petitioner's argument unavailing.

To satisfy due process, the void for vagueness doctrine seemingly at issue here, [ECF No. 2 at 3–4]; [ECF No. 21 at 8–9], requires that "a penal statute [must] define the criminal offense [1] with sufficient definiteness that ordinary people can understand what conduct is prohibited and [2] in a manner that does not encourage arbitrary and discriminatory enforcement." Skilling v. United States, 561 U.S. 358, 402–03 (2010) (quoting Kolender v. Lawson, 461 U.S. 352, 357 (1983)); see also United States v. Williams, 553 U.S. 285, 304 (2008) ("A conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement"). "Although the doctrine focuses on both actual notice to citizens and arbitrary enforcement, [the Supreme Court] ha[s] recognized . . . that the more important aspect of vagueness doctrine 'is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement.'" Kolender, 461 U.S. at 357–58 (quoting Smith v. Goguen, 415 U.S. 566, 574 (1974)). That said, "[t]he prohibition against excessive vagueness does not invalidate every statute which a reviewing court believes could have been drafted with greater precision." Rose v. Locke, 423 U.S. 48, 49 (1975). Generally, courts evaluate a vagueness claim only as applied to the facts of a particular case. [9] Williams, 553 U.S. at 304; see also Village of Hoffman

---

[9] Facial vagueness challenges may be brought in the First Amendment context, "permitting plaintiffs to argue that a statute is overbroad because it is unclear whether it regulates a substantial amount of protected speech." Williams, 553 U.S. at 304. Although Petitioner writes

Ests. v. Flipside, Hoffman Ests., Inc., 455 U.S. 489, 495 (1982) ("A plaintiff who engag[ed] in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.").  In the habeas context, "[t]he judgment of federal courts as to the vagueness or not of a state statute must be made in the light of prior state constructions of the statute."  Wainwright v. Stone, 414 U.S. 21, 22 (1973) (per curiam).  Thus, when determining whether a statute is unconstitutionally vague, federal courts "must take the statute as though it read precisely as the highest court of the State has interpreted it."  Id. (quoting Minnesota ex rel. Pearson v. Prob. Ct., 309 U.S. 270, 514 (1940)).

The Court cannot find that the MAC reached a decision contrary to or unreasonably applied the Supreme Court's void for vagueness precedent in upholding the lower court's probation revocation.  As the MAC observed, case law on the criminal harassment statute expressly holds that "[a] defendant's otherwise legal conduct may qualify as an act of harassment when considered with other evidence," Zinser, 2023 WL 7179297, at *2 (quoting Brennan, 112 N.E.3d at 1185), and, as such, "innocuous conduct may constitute harassment in certain circumstances," id.  Thus, the MAC continued, while "it is true that the placement of an (unanswered) telephone call by itself would not ordinarily constitute an act of harassment," in light of the circumstances of this particular case—namely, Petitioner's prior history of harassing conduct and, specifically, "intimidating conduct toward Linda, Susan and their families"— Petitioner "had notice that he could be held criminally liable for any act of harassment[.]"  Id. at

_____

that dialing phone numbers "cannot fail to implicate protected speech," [ECF No. 21 at 9], he does not further elaborate on this argument, see generally [id.], and the Court accordingly need and will not consider it.  Separately, the Court notes that the SJC has held that the criminal harassment statute is not facially invalid under the First Amendment.  Commonwealth v. Johnson, 21 N.E.3d 937, 945 (Mass. 2014).

*2–3; see also Commonwealth v. O'Neil, 853 N.E.2d 576, 585 (Mass. App. Ct. 2006) (finding that "any reasonable person would be greatly alarmed and experience severe emotional distress if subjected to such similar circumstances" as the victim).  The Court agrees that "a person of ordinary intelligence," Williams, 553 U.S. at 304, would have fair notice that attempting to contact individuals whom he had previously subjected to harassment would constitute prohibited conduct under the criminal harassment statute.

Neither is the MAC's conclusion an unreasonable application of Smith as Petitioner argues.  Smith involved a habeas petition challenging a conviction under Massachusetts's flag misuse statute, which made it a criminal offense to treat the flag of the United States "contemptuously."  415 U.S. at 570–71.  The Supreme Court found that the phrase "treats contemptuously" was impermissibly vague because it offered no notice to "men of common intelligence" as to what conduct was prohibited.  Id. at 574 (quoting Connally v. General Constr. Co., 269 U.S. 385, 391 (1926)); id. at 578 ("The language at issue is void for vagueness as applied to [Petitioner] because it subjected him to criminal liability under a standard so indefinite that police, court, and jury were free to react to nothing more than their own preferences for treatment of the flag").  As discussed supra, the MAC's interpretation of the criminal harassment statute noted that innocuous conduct may qualify as harassment "when considered with other evidence," which in Petitioner's case involved prior harassment allegations as well as "intimidating conduct toward Linda, Susan, and their families."  Zinser, 2023 WL 7179297, at *2.  Unlike the petitioner in Smith, in other words, Petitioner here did have "fair notice of what is prohibited."  Williams, 553 U.S. at 304.

Further, to the extent that Petitioner argues that the state courts' interpretation of the statute was vague because it offers no guidance to law enforcement and factfinders as to what

circumstances may reasonably cause severe emotional distress in a reasonable person, the Court rejects such a proposition and concludes that the MAC's determination was not objectively unreasonable.  First, it is not uncommon for criminal statutes to consider the circumstances of purported wrongful conduct when assessing how a reasonable person would react to such a conduct.  See, e.g., Commonwealth v. Matsos, 657 N.E.2d 467, 470 (Mass. 1995) (interpreting Mass. Gen. Laws ch. 265, § 43 and explaining that in assessing whether "apprehension of anticipated physical force is reasonable," one of the elements of common law criminal assault, the court "will look to the actions and words of the defendant in light of the attendant circumstances").  Second, when assessing the fourth element of the criminal harassment statute, Massachusetts courts commonly understand it to include the circumstances in which the wrongful conduct occurs.  See O'Neil, 853 N.E.2d at 585; Brennan, 112 N.E.3d at 1185.  Unlike in Coates v. City of Cincinnati, 402 U.S. 611 (1971), where the Supreme Court struck down as unconstitutionally vague an ordinance making it a criminal offense for three or more persons to assemble in certain locations "in a manner annoying to persons passing by," id. at 611,[10] the statute here does not rely on "wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings," Williams, 553 U.S. at 306; see also McFadden v. United States, 576 U.S. 186, 197 (2015) ("Under our precedents, a scienter requirement in a statute [such as here, requiring a finding of willfulness and malice] 'alleviate [s] vagueness concerns,' 'narrow[s] the scope of [its] prohibition[,] and limit[s] prosecutorial discretion.'" (quoting Gonzales v. Carhart, 550 U.S. 124, 149 (2007))).  Accordingly, the criminal harassment statute here does not "authorize[] or encourage[] seriously discriminatory enforcement."

---

[10] Coates, unlike the case at hand, also involved the right to free assembly and association.  402 U.S. at 615.

13

Williams, 553 U.S. 285 at 304 ("What renders a statute vague . . . is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of what that fact is.").  In sum, the Court does not find that the MAC's decision was contrary to established federal law or unreasonably applied such law.[11]

IV.    **CONCLUSION**

For the reasons stated herein, the Petition, [ECF No. 1], is **<u>DENIED</u>**.

**SO ORDERED.**

October 31, 2025                                              */s/ Allison D. Burroughs*
                                                             ALLISON D. BURROUGHS
                                                             U.S. DISTRICT JUDGE

---

[11] To the extent Petitioner contends that his due process rights were infringed because he was not provided with notice that attempting to contact Linda or Susan could result in criminal charges, the Court finds this argument equally unavailing.  Petitioner's probation contract contained several enumerated conditions, including that he must "obey local, state and federal laws and court orders."  Zinser, 2023 WL 7179297, at *3.  That condition sufficiently gave Petitioner notice that engaging in criminal activity was prohibited.